**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Daniel Joe MARTINEZ, Defendant–Appellant.**

**No. 98CA1459.**

Colorado Court of Appeals, Div. I.

Aug. 31, 2000.

Certiorari Denied Feb. 26, 2001.*

---

*Justice MARTINEZ and Justice BENDER would grant as to the following issue:

 Whether the court of appeals impermissibly ignored and overruled this Court's mandate in *People v. Dement* and violated the defendant's state and federal constitutional rights by holding that excited utterances constitute a "firmly rooted" exception for confrontation clause purposes and by affirming the erroneous admission of the victim's alleged hearsay statements.

Ken Salazar, Attorney General, Evan W. Jones, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Christopher H. Gehring, Deputy

State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Daniel Joe Martinez, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree assault and from the court's adjudication finding him guilty of three habitual criminal counts. We affirm.

Responding to a 911 call, police and paramedics found the victim lying on the ground and crying, with blood on her face and hands, and cuts and swelling on her face. She told a police agent and a paramedic that her boyfriend had hit her and identified him to police as defendant.

Taken to a hospital, the victim told the emergency room physician she had been "punched" three to four times, and the physician determined her nose and another facial bone had been broken, and her left sinus was full of blood.

In the meantime, based on bystanders' descriptions of the alleged perpetrator, the police apprehended defendant and arrested him. At the police station, defendant volunteered: "[N]ext time, I'll kill her.... [She] got what she deserved."

Thereafter, defendant was indicted by the grand jury for second degree assault. Later, the trial court granted the prosecution's motion to add three habitual criminal counts.

The victim did not appear for trial. Nevertheless, after hearing testimony from the police, the paramedic, the emergency room physician, and the bystanders, the jury found defendant guilty of second degree assault. After a bench trial, the court found defendant guilty of the habitual criminal counts and imposed a 24–year sentence to the Department of Corrections.

## I.

■ Defendant first contends the trial court's denial of his challenge for cause to a prospective juror constituted reversible error. We conclude that no error occurred.

■ Section 16–10–103(1)(j), C.R.S.1999, requires a trial court to grant a challenge for cause if it determines that a prospective juror has a state of mind that is biased toward either party.

■ The standard of review is whether the trial court abused its discretion. This standard gives deference to the trial court's assessment of the credibility of a prospective juror's responses, recognizes the trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses, and serves to discourage an appellate court from second-guessing those judgments based on a cold record. *Carrillo v. People,* 974 P.2d 478 (Colo.1999).

Here, the prospective juror initially stated that, if the complaining witness did not appear at trial, she would presume it would be because the witness was afraid of defendant.

However, on further inquiry, the prospective juror said she understood and agreed with the propositions of the presumption of innocence and the state's burden to prove the case beyond a reasonable doubt. The court asked whether she would allow the victim's non-appearance to influence her decision in any way, and the prospective juror said, "No."

The prospective juror also stated she would "follow the court's instructions on the law" and that the absence of the complaining witness would not be proof of defendant's guilt.

Thus, because the prospective juror's answers did not demonstrate bias and because she agreed with and pledged to abide by the pertinent law, we find no abuse of discretion in denying defendant's challenge for cause.

## II.

Defendant contends the trial court erred in (1) admitting, as excited utterances under CRE 803(2), hearsay statements made by the victim to an investigating police agent; and (2) admitting, as statements made for purposes of medical diagnosis or treatment under CRE 803(4), hearsay statements made by the victim to a paramedic. Defendant also asserts the admission of these statements at trial violated his Colorado and fed-

eral rights to confrontation and to a fair trial. We disagree.

### A.

■ Evidence meeting the criteria of CRE 803(2), the "excited utterance" exception to the hearsay rule, is admissible even though the declarant is available as a witness. An excited utterance is: "A statement relating to a startling event or condition made while the declarant is under the stress of excitement caused by the event or condition." CRE 803(2).

■ The requirements for admissibility under CRE 803(2) are: (1) the event must be sufficiently startling to render normal reflective thought processes of the observer inoperative; (2) the statement must be a spontaneous reaction to the occurrence; and (3) direct or circumstantial evidence must exist to allow the jury to infer that the declarant had the opportunity to observe the startling event. *People v. Dement*, 661 P.2d 675 (Colo. 1983); *People v. Green*, 884 P.2d 339 (Colo. App.1994).

■ If the evidence supports the trial court's ruling, we will not disturb it. *Canape v. Peterson*, 878 P.2d 83 (Colo.App.1994). The trial court is in the best position to consider the effect of the startling event on the declarant; thus, it is afforded wide discretion in determining admissibility under the excited utterance exception. *People in Interest of O.E.P.*, 654 P.2d 312 (Colo.1982); *People v. Bolton*, 859 P.2d 311 (Colo.App. 1993).

■ Here, after a hearing, the trial court determined the assault had been sufficiently startling to render the victim's normal reflective thought processes inoperative. That determination is supported by the police agent's description of the victim as being "extremely distressed, she couldn't stay in one position [and] she was alternating between rocking back and forward moaning, that she appeared to be in a lot of pain," and as being unable to engage in conversation.

The trial court also found "that at the hospital the victim—and this was within 15 or 20 minutes after the victim was removed from the scene—was still in pain. She was still writhing, she was still very emotional, and upset. She was clearly still under stress and excitement caused by this assault." The record supports this determination.

■ Contrary to defendant's assertions, the fact that the victim's statements were made in response to questions does not preclude them from being excited utterances. That circumstance is not dispositive of admissibility. *People v. Franklin*, 683 P.2d 775 (Colo.1984).

The third requirement, that there must be sufficient evidence to allow an inference that the declarant had the opportunity to observe the startling event, is also satisfied here. The victim's injuries are direct evidence that an assault—clearly a "startling event"—occurred.

The totality of the circumstances, including the severity of the victim's injuries, her agitated emotional state, and the brief time between the injury and the statements supports the trial court's determination that the statements were admissible under CRE 803(2). *See People in Interest of O.E.P.*, supra.

### B.

■ Defendant also asserts the statements the victim made to the paramedic should not have been admitted. Again, we disagree.

■ CRE 803(4), the medical diagnosis exception to the hearsay rule, includes: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The rationale for this rule is that such statements are presumptively reliable because of a patient's belief that the effectiveness of the treatment he or she receives may depend upon the accuracy of the information provided. *People v. Galloway*, 726 P.2d 249 (Colo.App.1986); *see also W.C.L. v. People*, 685 P.2d 176 (Colo. 1984).

The paramedic testified he had elicited the statements from the victim to assist in his medical diagnosis and treatment of her injuries. He said: "It's important to base our treatment on [how she was injured] ... and administer care and come up with a diagnosis for what actually happened."

The victim's statements were made in response to standard questions designed to elicit facts necessary for medical diagnosis and treatment. Additionally, all circumstances show that the victim's motive in making the statements was to obtain treatment. This was sufficient. *See People v. Stiles*, 692 P.2d 1124 (Colo.App.1984).

Further, defendant failed to object at trial to the evidence naming him as the perpetrator, and that evidence was cumulative of the testimony of two other witnesses. Thus, defendant's argument must fail. *See People v. Perez*, 972 P.2d 1072 (Colo.App.1998).

### C.

Finally, defendant contends the trial court's admission of the victim's statements violated his Colorado and federal constitutional rights to confrontation and to a fair trial and, thus, constituted reversible error. We reject this contention.

With respect to the right to confront and cross-examine witnesses, our supreme court, in *People v. Dement, supra*, adopted the rationale of *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Under *Dement* and *Roberts*, a case-by-case analysis is required in which the court must: (1) determine that the prosecution has established the unavailability of the declarant "in the constitutional sense" by producing evidence that good faith and reasonable efforts to produce the witness have been unsuccessful; and (2) ensure that the evidence ultimately admitted is limited to that which bears sufficient "indicia of reliability" to augment accuracy in the fact-finding process.

The trial court found the prosecution had satisfied its burden of proof of establishing that the victim could not be located and, therefore, that she was "unavailable" to testify. It noted that the "evidence presented shows that the People have gone to extreme efforts to try to locate this witness and have been unsuccessful." The attempts to find her included searching public records in several jurisdictions, contacting former employers, visiting last known addresses, and talking to acquaintances at two drinking establishments she was known to frequent.

Defendant complains the prosecution did not fulfill its obligation of undertaking reasonable efforts to locate the victim because the police had not obtained her address or social security number at the emergency room following the assault. This argument is unpersuasive because the record shows that, at that time, the victim was not in police custody nor was she charged with any crime. Thus, the trial court correctly focused on the prosecution's efforts to find the victim for trial.

In regard to the "indicia of reliability" component of the test for admissibility, if proffered hearsay has sufficient guarantees of reliability so as to place it within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied. *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992).

The Supreme Court has stated there "can be no doubt that the exceptions for excited utterances and statements made for medical treatment" are firmly rooted. *White v. Illinois, supra*, n. 8, 502 U.S. at 356, 112 S.Ct. at 743, 116 L.Ed.2d at 859. Similarly, excited utterances constitute a firmly rooted exception for purposes of the confrontation clause of the Colorado constitution. *People v. Mitchell*, 829 P.2d 409 (Colo.App.1991).

Consequently, the trial court did not impair defendant's rights to confrontation and to a fair trial by admitting the victim's statements.

### III.

Defendant also maintains that, because the trial court erred by ordering amendment of the indictment to add the habitual criminal counts, his adjudication as an habitual criminal must be vacated. We disagree.

Crim. P. 6.8(a) authorizes the court, in its discretion, to order amendment of an indictment "with respect to defects, errors, or variances from the proof relating to matters of form, time, place, and names of persons when such amendment does not change the substance of the charge, and does not prejudice the defendant on the merits...." Crim. P. 6.8(b) provides: "No indictment may be amended as to the substance of the offense charged."

According to § 18-1-104(1), C.R.S.1999, the terms "offense" and "crime" are synonymous. Section 18-1-104(2), C.R.S.1999, states that: "Each offense falls into one of eleven classes ... six classes of felonies as defined in section 18-1-105, three classes of misdemeanors as defined in section 18-1-106, and two classes of petty offenses as defined in section 18-1-107."

 The habitual criminal statute, § 16-13-101, C.R.S.1999, is not contained in the Criminal Code, which defines substantive offenses. *See* § 18-1-102, C.R.S.1999. Rather, it appears in the Code of Criminal Procedure, and only prescribes "circumstances wherein one found guilty of a specific crime may be more severely penalized because of his previous [criminal activities]." *Wright v. People,* 116 Colo. 306, 315, 181 P.2d 447, 452 (1947); *see also People v. Bernabei,* 979 P.2d 26 (Colo.App.1998).

The indictment here charged only one offense: second degree assault. The trial court's addition of the habitual criminal counts had no effect on the substance of that offense. Consequently, no violation of Crim. P. 6.8(b) occurred.

Nor did the trial court's action violate Crim. P. 6.8(a). The charge, second degree assault, remained the same. The addition of the habitual criminal counts had no effect on the substance of the indictment because it did not charge defendant with an additional offense. Moreover, defendant received timely notice of the amendment and, because the form and content of that amendment were correct, the court's jurisdiction was not affected. *See People v. Daniels,* 973 P.2d 641 (Colo.App.1998).

We recognize that §§ 16-13-101(2) and 16-13-103, C.R.S.1999 require the indictment or information to set forth separately the habitual criminal counts. However, those statutes are silent concerning the procedure to be followed in amending the charging documents. Consequently, we hold that the procedures for amendment in Crim. P. 6.8 apply and the trial court complied with that rule.

Therefore, we reject defendant's contention that the trial court erred in granting the prosecution's motion to amend the indictment by adding the habitual criminal counts.

The judgment is affirmed.

Judge JONES and Judge KAPELKE concur.