**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Joseph MARTINEZ, Defendant–Appellant.**

**No. 02CA0366.**

Colorado Court of Appeals,
Div. V.

Aug. 28, 2003.

Rehearing Denied Oct. 9, 2003.

Certiorari Denied Feb. 17, 2004.

1176

Ken Salazar, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Leslie A. Goldstein, Steamboat Springs, Colorado, for Defendant–Appellant.

Opinion by Judge CARPARELLI.

Defendant, Joseph Martinez, appeals the judgment of conviction entered upon a jury verdict finding him guilty of soliciting for child prostitution. Defendant also appeals the trial court's judgment adjudicating him an habitual criminal and the sentence imposed in conjunction with that determination. We affirm.

Defendant was initially charged with soliciting for child prostitution and unlawful sexual contact.

At trial, the fifteen-year-old victim testified that defendant had offered her and a friend money for performing what defendant's companion described as "sexual favors." The victim told defendant that she was not interested. According to the victim, she and defendant were left alone in the room and defendant forcibly touched her breasts and touched his penis to her leg.

The jury acquitted defendant of the sexual contact charge but found him guilty of soliciting for child prostitution.

## I.

Defendant first argues that the trial court committed reversible error by admitting, as an excited utterance, the victim's testimony that a third person entered the room during the sexual assault and remarked, "oh my God." We disagree.

## A.

Evidence meeting the criteria of CRE 803(2), the excited utterance exception to the hearsay rule, is admissible even though the declarant is available as a witness. An excited utterance is: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." CRE 803(2). The requirements for admissibility under CRE 803(2) are: (1) the event must be sufficiently startling to render normal reflective thought processes of the observer inoperative; (2) the statement must be a spontaneous reaction to the occurrence; and (3) direct or circumstantial evidence must exist to allow the jury to infer that the declarant had the opportunity to observe the startling event. *People v. Martinez*, 18 P.3d 831 (Colo.App.2000).

The trial court is in the best position to consider the effect of the startling event on the declarant. And, therefore, that court is afforded wide discretion in determining admissibility under the excited utterance exception. *People v. Martinez, supra.*

For purposes of analysis, we, like the trial court, accept the parties' representation that the statement at issue was offered to prove the truth of the matter asserted, that is, that the declarant observed the sexual assault and expressed shock at what was occurring.

The record supports the trial court's determination that the three requirements for admission of the statement as an excited utterance were satisfied. The victim's testimony constituted direct evidence that the declarant made the statement as a spontaneous reaction to a startling event which she had the opportunity to view. Contrary to defendant's contention, it was not necessary to produce the declarant herself to lay the foundation to admit the statement. Therefore, we perceive no abuse of discretion in the trial court's evidentiary ruling.

### B.

Defendant also contends the trial court's admission of the statement violated "his right to confront adverse witnesses as guaranteed by the U.S. Constitution." We disagree.

### 1.

"[W]here proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *White v. Illinois*, 502 U.S. 346, 356, 112 S.Ct. 736, 743, 116 L.Ed.2d 848, 859 (1992). Excited utterances have the necessary indicia of reliability and constitute a firmly rooted exception to the Confrontation Clause. *White v. Illinois*, *supra*; *People v. Martinez*, *supra*; *People v. Mitchell*, 829 P.2d 409 (Colo.App.1991).

Therefore, we conclude that admission of the testimony here did not violate the Sixth Amendment.

### 2.

To the extent that defendant also contends that admission of the statement violated his confrontation rights under Article II, Section 16 of the Colorado Constitution, we conclude that any error was harmless beyond a reasonable doubt.

The decision of the United States Supreme Court in *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980), has often been interpreted to require that, under the Sixth Amendment of the federal constitution, the "prosecution must either procure, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant."

"In an effort to maintain consistency between Colorado law and federal law," the Colorado Supreme Court adopted this requirement in *People v. Dement*, 661 P.2d 675 (Colo.1983), "to determine whether the admission of hearsay violated a defendant's right of confrontation secured by Article II, Section 16 of the Colorado Constitution." *Blecha v. People*, 962 P.2d 931, 941 (Colo. 1998).

However, as we have already noted, more recent decisions of the United States Supreme Court have held that the Sixth Amendment does not require a showing of unavailability when there are "sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule." *See White v. Illinois*, *supra*, 502 U.S. at 356, 112 S.Ct. at 743, 116 L.Ed.2d at 859; *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). Nonetheless, the Colorado Supreme Court has never expressly disavowed the requirement that unavailability be demonstrated. *Blecha v. People*, *supra*.

Here, the prosecution did not demonstrate that the declarant was unavailable. Thus, one step of the *Dement* test is not satisfied and, therefore, admission of the statement violated Article II, Section 16 of the Colorado Constitution.

### 3.

However, an error in the admission of evidence, even if of constitutional dimension, does not require reversal of a criminal conviction if the error was harmless beyond a reasonable doubt. *People v. Harris*, 43 P.3d 221 (Colo.2002); *People v. Smith*, 77 P.3d 751 (Colo.App.2003).

When assessing whether denial of the right to confrontation constituted harmless error, a reviewing court must consider whether, assuming that the damaging potential of the statement was fully realized, the reviewing court nonetheless can say that the error was harmless beyond a reasonable doubt. We should examine a number of factors, including the importance of the declarant's statement to the prosecution's case, the statement's cumulative nature, the presence or absence of corroborating or contradictory evidence on the material points of the witness's testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case. The ultimate question we must decide is whether the guilty verdict rendered in this trial was surely not attributable to the error. *People v. Harris*, *supra*.

Here, the declarant's statement related to the sexual assault charge of which defen-

dant was acquitted. Even if we were persuaded by defendant's suggestion that admission of the declarant's statement could have bolstered the credibility of the victim's testimony as a whole, we would nevertheless conclude that the error was inconsequential because the victim's testimony about the solicitation for prostitution was corroborated by her friend who was also propositioned. Under these circumstances, the admission of the out-of-court statement was harmless beyond a reasonable doubt.

## II.

Defendant next argues that the trial court abused its discretion when it allowed the victim to testify about the lasting psychological effects of the assault. We disagree.

Evidence is relevant if it has a tendency to render a fact of consequence more or less probable than it would be without such evidence. CRE 401. Relevant evidence, however, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. CRE 403.

Trial courts have considerable discretion concerning the admissibility of evidence and the determination of its relevancy, probative value, and prejudicial effect. To constitute an abuse of discretion, the trial court's evidentiary ruling must be shown to be manifestly arbitrary, unreasonable, or unfair. *People v. White,* 55 P.3d 220 (Colo.App. 2002).

Here, the victim testified that she had experienced insomnia, nightmares, and depression since the alleged assault. Defendant objected to this testimony as irrelevant and unfairly prejudicial.

Like the out-of-court statement discussed in the previous section, this statement related primarily to the charge of which defendant was acquitted. To the extent that the testimony had any prejudicial effect with respect to the charge of which defendant was convicted, the record supports the trial court's determination that that prejudice did not substantially outweigh the probative value of the evidence. Accordingly, we perceive no abuse of discretion in the trial court's ruling.

## III.

Defendant next contends there is insufficient evidence in the record to support the trial court's judgment finding him guilty of the habitual criminal counts. Specifically, he argues that the prosecution failed to prove he was the person who sustained the four prior convictions at issue. We disagree.

Defendant was charged as a habitual criminal under the following section:

Every person convicted in this state of any felony, who has been three times previously convicted, upon charges separately brought and tried, and arising out of separate and distinct criminal episodes, either in this state or elsewhere, of a felony ... shall be adjudged an habitual criminal and shall be punished for the felony offense of which such person is convicted by imprisonment in a correctional facility for a term of four times the maximum of the presumptive range pursuant to section 18–1.3–401 for the class of felony of which such person is convicted.

Section 18–1.3–801(2), C.R.S.2002.

In a habitual criminal action, the prosecution bears the burden of proving beyond a reasonable doubt that the accused is the person named in the prior convictions. Section 18–1.3–803(5)(b), C.R.S.2002; *People v. Mascarenas,* 666 P.2d 101 (Colo.1983).

Section 18–1.3–802, C.R.S.2002, governs the admission of evidence in habitual criminal proceedings. It provides that a duly authenticated copy of the record of a former conviction and judgment is prima facie evidence of the conviction and may be used as evidence at the habitual offender sentencing. However, this section does not establish the exclusive method for proving prior convictions. The prosecution may also carry its burden of proof by using certified copies of public records or documents which are admissible as public records under CRE 901(b)(7) or self-authenticating documents under CRE 902(1) and (4). *See People v. Bielecki,* 964 P.2d 598 (Colo.App.1998).

Here, the habitual criminal counts in the information were based on allegations

that defendant had been separately convicted of violation of bail bond conditions, aggravated incest, engaging in a riot with a deadly weapon, and felony menacing. During the habitual phase of the trial, the prosecution introduced certified court records of all four convictions.

The prosecution also introduced a certified copy of a record from the Department of Corrections (DOC), which included a photograph of defendant, a set of his fingerprints, and the mittimuses for the convictions for violation of bail bond conditions and aggravated incest. An investigator with the prosecutor's office who was personally familiar with the bail bond charge testified that defendant was the person who had been convicted. The victim of the aggravated incest case testified similarly with respect to that proceeding.

In addition, the prosecution introduced a booking sheet and a fingerprint card, which, according to the testimony of the detention facility employee who had fingerprinted defendant, were generated when defendant was charged in the felony menacing case. The date of offense on the booking sheet was the same as that appearing on the certified court records for defendant's menacing conviction.

The prosecution introduced a booking sheet with fingerprints that were taken when a person with the same name and date of birth as defendant was charged with inciting a riot.

The investigator with the prosecutor's office, who was personally familiar with the rioting charge, testified that defendant was the person who had been convicted.

The detention facility employee testified that he fingerprinted defendant when defendant was charged with solicitation for child prostitution in this case. The prosecution introduced defendant's fingerprint card into evidence, and an expert witness testified that the fingerprints on it were taken from the same person whose fingerprints appeared on the DOC records and the booking sheets for the menacing and rioting cases.

We conclude this evidence was sufficient to establish a chain of identity proving beyond a reasonable doubt that defendant was the per-

son convicted in all four of the prior cases on which the habitual criminal counts were based. *See People v. Mascarenas, supra.*

## IV.

Defendant further asserts that a forty-eight-year sentence is unconstitutionally disproportionate to his offense. We disagree.

"[A]n abbreviated proportionality review consists of a comparison of two subparts, the gravity of the offense and the harshness of the penalty, to discern whether an inference of gross disproportionality is raised." *People v. Deroulet*, 48 P.3d 520, 527 (Colo.2002).

A court determines whether a crime is grave or serious "by considering the harm caused or threatened to the victim or to society and the culpability of the offender." *People v. Deroulet, supra*, 48 P.3d at 524.

In almost every case, "the abbreviated proportionality review will result in a finding that the sentence is constitutionally proportionate, thereby preserving the primacy of the General Assembly in crafting sentencing schemes." *People v. Deroulet, supra*, 48 P.3d at 526.

Only if an inference of gross disproportionality is raised must the "abbreviated" proportionality review be followed by an "extended" proportionality review involving a comparison of defendant's sentence with those of other similar offenders. *People v. Deroulet, supra*, 48 P.3d at 526–27.

"[N]o remand is necessary in cases where an extended proportionality review is unnecessary; in such cases an appellate court may conduct an abbreviated proportionality review." *People v. Deroulet, supra*, 48 P.3d at 524.

Solicitation for child prostitution is a serious offense because it poses a great risk of harm to the victim. *See People v. Strean*, 74 P.3d 387 (Colo.App.2002)(sexual assault on a child and sexual assault on a child by one in a position of trust are grave and serious offenses). For similar reasons, aggravated incest is also a serious offense.

*Cf. People v. Schwartz,* 890 P.2d 82 (Colo.1995)(concluding that aggravated incest is a serious crime under C.R.C.P. 241.16(e)(1)).

■ Defendant's conviction of felony menacing is a conviction of a serious offense. *See Close v. People,* 48 P.3d 528 (Colo.2002)(felony menacing is a grave or serious crime for purposes of proportionality analysis). And the felony offense of engaging in a riot, which by definition involves the use of a deadly weapon, § 18–9–104, C.R.S. 2002, is sufficiently akin to felony menacing that we conclude it also constitutes a serious offense for proportionality purposes.

Although violation of bail bond conditions is not a particularly grave or serious offense, it is the only one of defendant's five convictions about which this can be said. *See People v. Cisneros,* 855 P.2d 822 (Colo. 1993)(a life sentence was not disproportionate where one of the defendant's prior felony convictions was for violation of bail bond conditions and other convictions were for serious offenses).

Viewing defendant's triggering and predicate convictions together, we conclude they are serious and do not give rise to an inference that a forty-eight-year sentence with the possibility of parole is grossly disproportionate.

## V.

Finally, defendant contends that he was denied his right to allocution prior to sentencing because the court did not explicitly afford him the opportunity to make a statement on his own behalf as required by § 16–11–102(5), C.R.S.2002, and Crim. P. 32(b). We conclude that the error was harmless.

"[B]efore imposing sentence, the court shall afford the defendant an opportunity to make a statement in his or her own behalf and to present any information in mitigation of punishment." Section 16–11–102(5).

■ To afford a defendant the opportunity to make a statement on his or her behalf, the trial court must address the defendant in a manner that leaves no doubt that the defendant is personally invited to speak before

sentencing. *See People v. Marquantte,* 923 P.2d 180 (Colo.App.1995).

■ However, the right of allocution is a statutory right, not a constitutional one, and reversal is not required if the error is harmless. *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Therefore, we must determine whether the error was harmless. *See United States v. Mejia,* 953 F.2d 461 (9th Cir.1991); *State v. Lindsey,* 203 Wis.2d 423, 554 N.W.2d 215 (Wis.Ct.App. 1996).

■ The People concede the trial court erred when it did not afford defendant an opportunity to exercise his statutory right to make a statement in allocution. However, they assert that the error was harmless because defendant received the minimum sentence required by law. We agree.

■ The trial court imposed the minimum sentence permitted. Because the trial court did not have discretion to impose a lesser sentence, the lack of a statement in allocution did not affect the sentence. *Cf. People v. Renfrow,* 199 Colo. 101, 605 P.2d 915 (1980)(vacating sentence and remanding for resentencing where trial court did not afford opportunity for allocution and court had discretion to impose lesser sentence). Therefore, we conclude as a matter of law that the trial court's error was harmless.

The judgment and sentence are affirmed.

Judge ROTHENBERG and Judge VOGT occur.