The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Jimmy J. VASQUEZ, Defendant–Appellant.**

No. 04CA0729.

Colorado Court of Appeals, Div. II.

Nov. 30, 2006.

Certiorari Granted March 26, 2007.

John W. Suthers, Attorney General, Laurie A. Booras, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Todd E. Mair, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Jimmy J. Vasquez, appeals the judgment of conviction entered upon jury verdicts finding him guilty of violation of bail bond conditions and violation of a restraining order. We affirm.

In June 2002, Vasquez was placed under a restraining order, prohibiting contact with his wife. The following month, he was arrested for criminal trespass, harassment, and criminal mischief committed against his wife (the harassment case) and released on bond with a condition of no contact with his wife.

In August 2002, Vasquez's wife telephoned the police, asserting that Vasquez had left messages on her voice mail. A sheriff's deputy testified that he responded to the wife's call, listened to nine messages on her phone, and, because of a subsequent meeting with Vasquez, recognized the caller's voice as belonging to Vasquez. In the telephone messages, Vasquez stated he was going to look for his wife and that he knew which laundromat she frequented.

A few days later, another deputy went to the wife's home to record the messages. She had deleted those nine messages, but had recorded another four messages and identified the caller as Vasquez. A tape of those messages was introduced into evidence at trial. However, Vasquez's wife was killed two days before she was to testify against Vasquez in the harassment case.

Vasquez admitted to an officer arriving at the scene of her homicide that he had killed his wife because "she set [him] up." The court sentenced Vasquez in this case before he was to be tried for the first degree murder of his wife.

I. Forfeiture by Wrongdoing

■ Vasquez argues the trial court erred in admitting statements by his wife under the doctrine of forfeiture by wrongdoing because it denied him his right to confront witnesses against him. We disagree.

In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that admitting testimonial hearsay at trial, absent the unavailability of the declarant and a prior opportunity for cross-examination by the defendant, violates the defendant's confrontation right under the Sixth Amendment to the United States Constitution. *See People v. Vigil*, 127 P.3d 916, 921 (Colo.2006); *Compan v. People*, 121 P.3d 876, 880 (Colo.2005). Although the Supreme Court did not precisely define "testimonial" statements, *see People v. Vigil, supra,* the prosecution here does not dispute that Vasquez's wife's statements were testimonial in nature.

■ However, a defendant waives his or her Confrontation Clause rights under the doctrine of forfeiture by wrongdoing where he or she procures the unavailability of a witness against him or her. *Crawford v. Washington, supra* (citing *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1878)).

Relying on *Crawford,* a division of this court adopted the common law doctrine of forfeiture by wrongdoing. *People v. Moore*, 117 P.3d 1 (Colo.App.2004). Recently, the supreme court granted a petition for certiorari in a case that relied on *Moore* in rejecting the defendant's Confrontation Clause challenge to the victim's out-of-court statements based on the forfeiture by wrongdoing doctrine. *People v. Kelly*, 2005 WL 3547982 (Colo.App. No. 02CA1839, Dec. 29, 2005)(not published pursuant to C.A.R. 35(f) ) (*cert.* granted Nov. 6, 2006).

In *Moore,* the division held that "a defendant is not to benefit from his or her wrongful prevention of future testimony from a witness, regardless whether that witness is the victim in the case." *People v. Moore, supra,* 117 P.3d at 5.

Nonetheless, Vasquez argues the division in *Moore* did not adequately analyze the limitations and requirements of the forfeiture by wrongdoing doctrine and, thus, we should not follow it. Specifically, Vasquez argues the doctrine requires the prosecution to show (1) the defendant intended to procure the unavailability of a witness to prevent the witness from testifying against the defendant, and (2)

the defendant acted to prevent the witness from testifying in the particular case in which the hearsay evidence is offered. Further, Vasquez contends that the prosecution could not show he killed his wife to prevent her from testifying in this case because this case was not pending when he killed his wife. He contends, therefore, that he could not have formed the intent to prevent her from testifying in this case when he did not even know such a case would be filed. He argues that even if he specifically intended to prevent his wife's testimony, that intent applied to a separate check fraud case and not to this case. We disagree.

By the 1970s, numerous federal courts, following *Reynolds v. United States, supra,* had adopted the forfeiture by wrongdoing doctrine, and, in 1997, it was codified in Federal Rule of Evidence 804(b)(6). Fed. R.Evid. 804(b)(6) makes admissible "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." The plain language of the federal rule requires that the defendant intend to prevent the witness from testifying in the same case in which the hearsay testimony is offered, and federal courts have interpreted the federal rule accordingly. *See, e.g., United States v. Gray,* 405 F.3d 227 (4th Cir.2005).

Furthermore, a majority of state courts has adopted that requirement. *See People v. Melchor,* 362 Ill.App.3d 335, 299 Ill.Dec. 8, 841 N.E.2d 420 (2005) (collecting cases), *appeal allowed,* 218 Ill.2d 551, 303 Ill.Dec. 6, 850 N.E.2d 811 (2006); *see also Commonwealth v. Edwards,* 444 Mass. 526, 830 N.E.2d 158 (2005) (noting the doctrine has been adopted in fourteen states and the District of Columbia, with varying requirements).

Most of those courts relied upon either a state rule of evidence patterned after Fed. R.Evid. 804(b)(6) or this federal rule and federal decisions interpreting it. *State v. Henry,* 76 Conn.App. 515, 820 A.2d 1076 (2003) (relying on federal rule and federal cases interpreting the federal rule); *Commonwealth v. Santiago,* 822 A.2d 716 (Pa.Super.Ct.2003) (relying on state rule of evidence identical to Fed.R.Evid. 804(b)(6) ); *cf. Commonwealth v. Edwards, supra* (distinguishing between requirements under the federal rule and under state law while adopting an intent requirement). Those courts not expressly relying upon the federal rule did not analyze the issue. *Commonwealth v. Edwards, supra; State v. Wright,* 701 N.W.2d 802 (Minn.2005), *vacated,* —— U.S. ——, 126 S.Ct. 2979, 165 L.Ed.2d 985 (2006) (mem.) (remanded to state court for reconsideration in light of hearsay analysis in *Davis v. Washington,* —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)).

In contrast, a minority of courts adopting the forfeiture by wrongdoing doctrine has not required the prosecution to show that the defendant's intent in procuring the unavailability of the witness was to prevent him or her from testifying in the same case in which that witness's hearsay testimony is offered. *See United States v. Garcia–Meza,* 403 F.3d 364 (6th Cir.2005)(rejecting view that federal rule requires that defendant procured witness's unavailability with specific intent to prevent his or her testimony); *United States v. Emery,* 186 F.3d 921 (8th Cir.1999); *People v. Bauder,* 269 Mich.App. 174, 712 N.W.2d 506 (2005); *see also Gonzalez v. State,* 155 S.W.3d 603 (Tex.App.2004), *aff'd on other grounds,* 195 S.W.3d 114 (Tex.Crim. App.2006). In *Gonzalez, supra,* the Texas Court of Appeals held:

> A defendant whose wrongful act renders a witness unavailable for trial benefits from his conduct if he can use the witness's unavailability to exclude otherwise admissible hearsay statements. This is true whether or not the defendant specifically intended to prevent the witness from testifying at the time he committed the act that rendered the witness unavailable.

*Gonzalez v. State, supra,* 155 S.W.3d at 611.

We agree with the minority view because (1) Colorado has not adopted a rule of evidence similar to the federal rule; (2) the common law doctrine of forfeiture by wrongdoing did not impose a requirement that the defendant intended to prevent the witness from testifying in the same case in which the hearsay testimony is offered; and (3) the

rationale of the doctrine is consistent with not requiring such a showing.

First, Colorado courts have not adopted the federal rule. Instead, the division in *People v. Moore* relied upon the common law in adopting the forfeiture by wrongdoing doctrine. Therefore, we are not bound by the language of the federal rule or subsequent decisions interpreting that rule.

Second, the common law doctrine of forfeiture by wrongdoing, as adopted by *Reynolds v. United States, supra,* and affirmed in *Crawford v. Washington, supra,* does not require that the defendant intend to procure the witness's unavailability to prevent him or her from testifying.

The *Reynolds* Court did not impose an intent requirement. The Court stated: "The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege." *Reynolds v. United States, supra,* 98 U.S. at 158.

This language shows the Supreme Court adopted the forfeiture by wrongdoing rule as an equitable doctrine. It did not limit the doctrine to cases where the defendant intended to prevent a witness from testifying in the same case in which the hearsay testimony is offered.

Likewise, the Supreme Court did not impose an intent requirement when, earlier this year, it reaffirmed the forfeiture by wrongdoing doctrine in *Davis v. Washington, supra.* Although the Court expressly declined to adopt standards necessary to demonstrate forfeiture, it held:

[W]hen defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce.... We reiterate what we said in *Crawford:* that "the rule of forfeiture by wrongdoing ... extinguishes confrontation claims on essentially equitable grounds." That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.

*Davis v. Washington, supra,* —— U.S. at ——, 126 S.Ct. at 2280 (citations omitted) (quoting *Crawford v. Washington, supra,* 541 U.S. at 62, 124 S.Ct. at 1370).

This language does not impose a requirement that the defendant intend to prevent a witness from testifying in the same case in which the hearsay testimony is offered. Thus, the cases interpreting the common law doctrine of forfeiture by wrongdoing have not required a showing that the defendant intended to procure a witness's unavailability to prevent him or her from testifying in the same case in which the hearsay testimony is offered.

Finally, the purpose of the forfeiture by wrongdoing doctrine is to prevent a defendant from benefiting from his or her own wrongdoing. *Reynolds v. United States, supra.* We agree with the court in *Gonzalez v. State, supra,* that the rationale for the doctrine of forfeiture by wrongdoing is applicable regardless of whether the defendant's purpose in procuring the witness's unavailability was to prevent him or her from testifying in the same case in which the hearsay testimony is offered.

Here, the trial court found, in ruling on the admissibility of the hearsay statements, that there was clear and convincing evidence that Vasquez killed his wife. The court relied on the testimony that, when the police arrived at the scene of the homicide, Vasquez told the first arriving officer that he had killed his wife because "she set [him] up." Further, the trial court found that statement was evidence that Vasquez was motivated, at least in part, to silence his wife.

Vasquez argues that his confession did not relate to this case because his other statements alluding to the FBI and to a check cashing scheme related to yet another criminal case against him apart from the harassment and homicide cases. He argues that because the prosecution did not prove he killed his wife to prevent her from testifying in *this* case, the forfeiture doctrine may not act to extinguish his rights. We disagree.

Basic equity prescribes that Vasquez may not benefit from his wrongdoing regardless of whether he intended to kill his wife to prevent her from testifying in this case. Whether he killed her to prevent her from testifying in this case, to prevent her from testifying in the check fraud case, or for some other purpose altogether, Vasquez cannot claim a right to confront a witness he intentionally killed.

Therefore, Vasquez forfeited his right to confrontation.

Because Vasquez did not raise the issue, we do not address the applicable standard of proof in determining forfeiture.

## II.  Waiver of Hearsay Objection

■ Vasquez next argues that even if we apply the forfeiture by wrongdoing doctrine to this case, the trial court abused its discretion in admitting his wife's statements under the residual exception to the hearsay rule. We disagree.

An overwhelming majority of courts adopting the forfeiture by wrongdoing doctrine has held that the defendant's wrongful act also precludes a hearsay objection to the unavailable witness's testimony. *See United States v. White,* 116 F.3d 903 (D.C.Cir.1997); *United States v. Houlihan,* 92 F.3d 1271 (1st Cir. 1996) (finding defendant's misconduct waived not only his confrontation rights but also his hearsay objections, rendering a finding of reliability superfluous); *United States v. Mastrangelo,* 693 F.2d 269 (2d Cir.1982) (holding if a defendant forfeits his or her right to confrontation, he or she *a fortiori* waives any hearsay objection).

State courts have also followed this approach. *See State v. Henry, supra; Devonshire v. United States,* 691 A.2d 165 (D.C. 1997); *State v. Hallum,* 606 N.W.2d 351 (Iowa 2000); *Commonwealth v. Edwards, supra.*

In contrast, a minority of courts has analyzed a defendant's hearsay objection even where the defendant has forfeited his or her right to confrontation. *United States v. Rouco,* 765 F.2d 983 (11th Cir.1985); *United States v. Carlson,* 547 F.2d 1346 (8th Cir. 1976). However, these courts did not analyze whether the application of the forfeiture by wrongdoing doctrine to deny a Confrontation Clause claim necessarily extinguished a related hearsay objection. *United States v. Rouco, supra; United States v. Carlson, supra.*

We find the majority view to be more persuasive and adopt it here. "[H]earsay rules and the Confrontation Clause are generally designed to protect similar values." *United States v. White, supra,* 116 F.3d at 913 (quoting *California v. Green,* 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970)). Further, the Confrontation Clause, as a constitutional right, provides more expansive protections than a court-promulgated hearsay rule. *See United States v. White, supra,* 116 F.3d at 913 (holding the same equity and policy considerations that apply to the Confrontation Clause, "apply with even more force to a rule of evidence without constitutional weight"). We agree with the reasoning of the court in *United States v. White, supra,* 116 F.3d at 912:

> Because both the hearsay rule and the confrontation clause are designed to protect against the dangers of using out-of-court declarations as proof, a defendant's actions that make it necessary for the government to resort to such proof should be construed as a forfeiture of the protections afforded under both. Both the clause and the rule incorporate a preference for testimony tested by cross-examination, given under oath with the attendant penalty for perjury, and uttered before a jury able to observe the witness's demeanor.

Here, we conclude Vasquez forfeited his hearsay claim, as well as his Confrontation Clause claim, by his wrongful conduct. Therefore, we need not analyze whether the court erred in ruling the hearsay was admissible under the residual hearsay exception, CRE 807.

The judgment is affirmed.

Judge VOGT and Judge TERRY concur.